THE STATE OF OHIO, APPELLEE, *v.* LOSHIN ET AL., APPELLANTS.

(No. C-850322—Decided
August 6, 1986.)

*Arthur M. Ney, Jr.,* prosecuting
attorney, and *William E. Breyer,* for
appellee.
*Allen Brown,* for appellants.

BLACK, J. In this appeal from the
conviction of pandering obscenity by
selling a masturbatory device known
as a "stroker," in violation of R.C.
2907.32(A)(2),[1] defendants-appellants
present eight assignments of error ac-
companied by a wide range of argu-
ments. After reviewing twelve vol-
umes of transcript covering more than
ten days of trial and post-trial pro-
ceedings, and after considering defen-
dants' arguments, we conclude that
none of the assignments of error have
any merit.

The defendants are Phillip R. Lo-
shin and Nancy Loshin, husband and
wife, and their corporation, P & N Lo-
shin, Inc., in conjunction with which
they operated a gift and novelty store
known as the Cupboard, located at
2613 Vine Street in the neighborhood
of the University of Cincinnati. These
three defendants were jointly indicted
on six counts of selling obscene materi-
al but were found guilty of only the
first count. In that count, the charge
was that on March 1, 1984, they sold
three named devices, "any one or all of
which are obscene," knowing that the
material was obscene, with the addi-
tional allegation that Phillip R. Loshin
had previously been convicted of vio-
lating R.C. 2907.32(A)(5) (possession
of obscene material for sale) in 1981.
The jury returned three verdicts find-

---

[1] R.C. 2907.32(A)(2) reads in pertinent
part:

"(A)   No person, with knowledge of the
character of the material or performance
involved, shall do any of the following:

" * * *

"(2)   * * * sell * * * any obscene ma-
terial[.]"

ing each of the three defendants guilty of the first count. In response to a "special question" propounded with the consent of the prosecution and the defense, the jury found that the "stroker" was obscene while the other two devices named in the first count were not obscene. The jury also found that Phillip R. Loshin had been convicted of pandering obscenity in 1981, as charged. Each of the three defendants was fined; the terms of incarceration imposed on the Loshins (one year for Phillip and seven days for Nancy) were suspended and they were placed on probation for three years.

The jury found defendants not guilty of the second and fourth counts but declared themselves unable to agree on the third, fifth and sixth counts. The status of these three counts being challenged by this appeal, the trial court has stayed all proceedings under them pending appeal.

We will address the eight assignments of error in a different order than presented. First, we consider the seventh assignment of error because it challenges the constitutionality of the statute that defendants were found guilty of violating. The statutory scheme for the control of obscenity is constitutional when the guidelines of *Miller* v. *California* (1973), 413 U.S. 15 (herein the *Miller* guidelines)[2] are incorporated in the statutory scheme.[3] *State* v. *Burgun* (1978), 56 Ohio St. 2d 354, 10 O.O. 3d 485, 384 N.E. 2d 255, paragraph one of the syllabus. Reading the obscenity statutes and the *Miller* guidelines together may be difficult, but this procedure has proved workable. So long as we have an exception in the form of obscene material to the broad guarantees of free speech in the First Amendment, the combination of the federal guidelines and the state statutes has been found to be satisfactory.

In the third assignment of error,

---

[2] The *Miller* guidelines are:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest * * *; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. * * *" *Miller* v. *California* (1973), 413 U.S. 15, 24.

[3] The Ohio definition of "obscene" is found in R.C. 2907.01(F):

"(F) When considered as a whole, and judged with reference to ordinary adults or, if it is designed for sexual deviates or other specially susceptible group, judged with reference to that group, any material or performance is 'obscene' if any of the following apply:

"(1) Its dominant appeal is to prurient interest;

"(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite;

"(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

"(4) Its dominant tendency is to appeal to scatological interest by displaying or depicting human bodily functions of elimination in a way that inspires disgust or revulsion in persons with ordinary sensibilities, without serving any genuine scientific, educational, sociological, moral, or artistic purpose;

"(5) It contains a series of displays or descriptions of sexual activity, masturbation, sexual excitement, nudity, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient or scatological interest, when the appeal to such an interest is primarily for its own sake or for commercial exploitation, rather than primarily for a genuine scientific, educational, sociological, moral, or artistic purpose."

defendants allege error in denying their several motions to dismiss the charges. The first argument is that the prosecution omitted a constitutionally required first step in an obscenity case, when it failed to obtain a preliminary finding that the material (the "stroker" in the instant appeal) was obscene. Defendants argue that that determination should have been made before the police investigators purchased the item. We find no such requirement in the law. Such a preliminary finding is necessary before an item can be seized by law enforcement officers, but the courts have not imposed this requirement when the officers purchase the item in the regular course of trade.

The second argument for dismissal of the charges is that the grand jury was not properly instructed on the definition of obscenity before it returned the indictment. Assuming without deciding that there is some required degree of clarity for instructions on the law to a grand jury, we find that the record is insufficient to substantiate defendants' claim that the grand jury in this instance was not instructed on the *Miller* guidelines. The affidavit of assistant county prosecutor Steven M. Tolbert (one of the exhibits to defendants' motion to dismiss) states that in presenting the case to the grand jury he "generally described" the *Miller* guidelines. In the absence of any demonstration that this general description was misleading or inadequate, we are not prepared to hold that the grand jury proceedings were defective.

In the fifth assignment of error, defendants challenge the effectiveness of the first count because it states that "any one or all" of the named devices are obscene.[4] They claim that the law

requires that the prosecution must allege and prove that *all* items specified in the count are obscene, that the jury must find that *all* are obscene, and that failure to do so invalidates the conviction. We do not agree. In *State* v. *Abrams* (July 8, 1981), Hamilton App. No. C-800410, unreported, we held that a defendant could not be convicted of a separate offense for each obscene item sold by the defendant in a single transaction, because the legislature defined the offense in R.C. 2907.32 (A)(2) as the selling of "any obscene material," not as the sale of "any one item of obscene material." In other words, the focus of the enactment was on the sales transaction as the discrete criminal event, not the several items included in the transaction; thus, any sale that includes some obscene material is a violation of the statute. *State* v. *Abrams, supra,* at 5-7. We reaffirm that decision. We perceive no violation of substance to defendants' rights when the prosecution charges that the obscene material was any one or more of three named items purchased from defendants in one transaction.

In the fourth assignment of error, defendants contend that the trial court committed error by conducting an inadequate inquiry into "spectator misconduct in relation to the jury." On the sixth day of trial (April 16, 1985), the trial court was advised that a spectator who had been attending the trial on and off was observed talking to a juror in a hallway during a recess. Without any reported objection by either the prosecution or the defense, the judge interviewed the spectator in chambers with the court reporter present. The spectator identified himself as John Rinck and told the judge that the con-

---

[4] The third, fifth and sixth counts also contain the clause "any one or all of which are obscene." While the validity of those counts is not before us in this appeal because there has been no final determina-tion about the status of those counts (as we hold in disposing of the eighth assignment of error), our upholding this phraseology in the first count is obviously applicable to the third, fifth and sixth counts.

versation, which lasted only a few minutes, was not related to the substance of the trial but to whether Rinck was a reporter and whether the juror had ever seen him before. The judge obviously found no misconduct, relying on Rinck's credibility. The juror was not interviewed. Later that day, the court told defense counsel about the Rinck interview, making a complete disclosure, and defense counsel said, "I have nothing to state at this point concerning that, but I thought it should be spread upon the record." Nothing further occurred in this matter until after the jury was discharged having returned its several verdicts. At a post-trial hearing, defense counsel raised the matter again, stating that further inquiry disclosed the information that Rinck was involved in another obscenity matter as a prosecution witness (apparently as a purchaser of obscene material from a store in another county). After extended discussion, defense counsel was given permission to interview the jurors about the effects of the recess conversation with Rinck. We find no subsequent report or mention of this incident in the record.

Defendants now claim the trial court's inquiry was in error. We hold that the claim is without merit, for three reasons. First, we hold that a brief hallway conversation between a spectator and a juror, standing by itself, does not raise a presumption of misconduct sufficient to require a new trial. Second, the trial court concluded after a personal interview with Rinck, having observed him on earlier days as a spectator, that the jury was not compromised. We are unwilling to find that the court's conclusion from personal observation was patently wrong. Third, defense counsel indicated an intent to talk to the discharged jurors (when he asked "permission" to interview them), but the record is devoid of any evidence of jury tampering. The record thus fails to demonstrate any prejudice to defendants.

In the sixth assignment of error, defendants contend that the court erroneously excluded evidence crucial to the determination of obscenity. For the reasons that follow, we are not persuaded that the court erred in the several respects advanced by defendants.

While the court permitted defense counsel to call Phillip Zorn, a former assistant county prosecutor, it did not permit any questions about whether he had attended an occasion sponsored by the University of Cincinnati Medical College in which sexual literature and sexual devices (vibrators and dildoes) were displayed and explained to medical students and others in attendance. The evidence would have been relevant to the determination of what are "contemporary community standards." Evid. R. 401. However, another defense witness who was present at that occasion testified about Zorn's presence and about the content of the presentations. We can perceive no prejudice in the exclusion of Zorn's testimony.

Next, defendant Phillip R. Loshin asserts that the court erred when it excluded evidence about his 1981 conviction that would permit the jury to evaluate the validity of that conviction when viewed under community standards prevailing in 1984, the year of the alleged offenses in the instant case. The legislature provided in R.C. 2907.32(C) that a previous conviction of that section or of R.C. 2907.31 (that is, the mere existence of the conviction) raises the degree of the offense of pandering obscenity from a first-degree misdemeanor to a fourth-degree felony. The legislature did not require a determination of the obviously difficult question of whether under a shift in community standards the 1981 conviction would have been repeated in

1985, the year of the trial in the instant case.

Next, defendants argue that the court did not allow lay witnesses to give their personal opinions about whether particular exhibits violated certain of the *Miller* guidelines. We find no reversible error. As we suggested in *State* v. *Abrams, supra,* at 9, experts may give their opinions about "contemporary community standards," and the defense in the instant case presented extensive testimony from two experts about those standards. However, defendants now complain that five lay witnesses were not permitted to give their opinions on whether certain exhibits were "patently offensive" or whether they "appeal to the prurient interest." In *State* v. *Abrams, supra,* at 7-10, we held that the determination of what is "patently offensive" or "appeals to the prurient interest" falls within common knowledge and experience and does not require professional or other specialized knowledge. Lay witnesses may testify about what they have observed or done with respect to items allegedly obscene, and they may state whether any challenged item taken as a whole appeals to the prurient interest using the objective test of contemporary community standards. They may also testify whether the items are patently offensive.

Our review of the record discloses five instances[5] in which a lay person was allowed to respond to questions (whether by the defense or the prosecution) about the prurient-interest appeal or the patent offensiveness of certain exhibits (whether offered by the prosecution or the defense), and five instances[6] in which objections to the same type of question were sustained. However, we eliminate two of those last five instances because in one instance the witness had stated he had no opinion about the community standard relative to prurient interest, and in both instances the question posed by defense counsel was about appeal to the witness's own prurient interest. We hold that the errors in excluding the three other responses, when considered with the other defense testimony that the "stroker" was more of a joke than patently offensive or appealing to the prurient interest as well as all the evidence presented to the jury, did not affect the defendants' substantial rights, including their right to a fair trial. Evid. R. 104(A). Furthermore, the excluded evidence would have been cumulative. Evid. R. 403(B). The exclusion of testimony from lay witnesses did not affect substantial rights. Crim. R. 52(A).

Finally, we perceive no error when the court excluded an attempt by defense counsel to have one of his experts on contemporary community standards testify about his findings on this subject in 1980. These findings do not appear to us to be relevant to a charge of pandering obscenity in 1984, but even if they were relevant, the court had discretion to exclude the evidence as causing undue delay or as being needlessly cumulative. Evid. R. 403(B).

---

[5] The five instances when lay testimony on either or both offensiveness and prurient appeal were allowed are found at Transcript, Vol. 7, 874-875 (Stewart Gregory), *id.* at 903 (Paul Hudson), Vol. 8, 1149-1156 (Monica Morgan Hawley), and Vol. 1, 16 (Monica Morgan Hawley), *id.* at 58 (Julie Wendling).

[6] The five instances when objections to the questions were sustained are found at Transcript, Vol. 8, 1073 (Monica Morgan Hawley), Vol. 1, 97 (Tom Kalin), *id.* at 121 (Rev. Joseph C. Herron), *id.* at 125-126 (Swamy N. Sunkara), Vol. 2, 283 (Bradley George Haas).

In the first assignment of error, defendants maintain the court erred in failing to grant their several motions for acquittal under Crim. R. 29, claiming the evidence was insufficient as a matter of law to establish both that the stroker was obscene under contemporary community standards and that the defendants had knowledge of the obscenity. The assignment of error has no merit. The evidence was sufficient for rational minds to find that all the elements of pandering obscenity had been proved beyond a reasonable doubt. *Jackson* v. *Virginia* (1979), 443 U.S. 307, 318-319; *State* v. *Ely* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132, syllabus; *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184.

Contrary to defendants' assertion, the prosecution has no obligation to present expert testimony on contemporary community standards, since the items themselves are the best evidence of what they are. *Paris Adult Theatre I* v. *Slaton* (1973), 413 U.S. 49, 55-56. Expert opinion on this subject is permitted, *State* v. *Abrams, supra,* but not required.

Rational minds could conclude that the stroker was obscene. The item had two parts: a large vacuum pump, composed of a cylinder and a hand pump, and a booklet of instructions. Across the base of the cylinder was a plastic "sealant" roughly molded in the shape of a penis extending up into the cylinder; the hand pump was attached to the top. The instructions were to place an erected penis in the mold, cover an open hole in the top of the pump with a finger, and pump air from the cylinder. The stated purpose was to enlarge the penis. The instruction booklet entitled "The Art of Penis Enlargement" contained thirteen photographs of a nude male with an erection assisted and excited by a semi-nude female, in a series of poses depicting an imminent sexual climax. A reasonable conclusion is that this was a masturbatory device, not a medical or other scientific instrument, the dominating tendency of which was to appeal to the prurient interest. Taking the pump and the instructions as a single item, which they obviously were, we cannot say that the stroker was non-obscene as a matter of law.

The evidence of scienter was sufficient. R.C. 2907.32(A) requires proof that the accused have "knowledge of the character of the material," and R.C. 2907.35(A)(2)[7] provides a presumption that the owner of a sales organization has knowledge of the character of the material if he has actual notice of the nature of the material. *State* v. *Burgun, supra,* paragraph two of the syllabus. The stroker was on display in a salesroom. Both Mr. and Mrs. Loshin worked in the Cupboard from time to time. The store manager knew what and where it was, and allowed it to remain displayed for sale, even though she thought it was overpriced and had little "marketability."

In the second assignment of error, defendants contend that the trial court committed error in its jury instructions in several respects. First, they contend that the combination of the *Miller*

---

[7] R.C. 2907.35(A)(2) reads:

"(A) An owner or manager, or his agent or employee, of a bookstore, newsstand, theater, or other commercial establishment engaged in selling materials or exhibiting performances, who, in the course of business:

"* * *

"(2) Does any of the acts prohibited by section 2907.31 or 2907.32 of the Revised Code, is presumed to have knowledge of the character of the material or performance involved, if he has actual notice of the nature of such material or performance, whether or not he has precise knowledge of its contents."

standards and the statutory definitions is confusing. This combination of judicial and legislative definitions is not easy, but as we said in disposing of the seventh assignment of error, it has been approved and it is workable. Second, the defendants complain that the court instructed the jury first on the statutory definitions, and then on the *Miller* guidelines and finally on explanation of the terms of those guidelines; defendants maintain that the *Miller* guidelines must be stated first. We find no such requirement in the law. They also protest that "sexual conduct" has one meaning under the federal guidelines and another under the Ohio statutes. We find that these characteristics of obscenity definitions are not irreparably confusing and can be understood and applied by the average juror. Next, we reject the defendants' broad objection that "the instructions were not tailored to the facts," because we find that, taken as a whole, the jury instructions were eminently satisfactory and were pertinent to the evidence.

Defendants point to error in refusing to instruct the jury on "mistake," claiming that the appearance of the stroker on display in the Cupboard was unknown to defendants and thus a mistake. On examination, the factual foundation for this contention collapses. The store manager acknowledged that two or three strokers were bought from suppliers, that this was "unfortunate" because the item had little marketability (it was dark and somber and had no surprise factor), and that it was overpriced. Its appearance on display was no mistake. Furthermore, the defendants failed to make a written request for an instruction on mistake and therefore cannot raise the claim of error on appeal. *State* v. *Fanning* (1982), 1 Ohio St. 3d 19, 1 OBR 57, 437 N.E. 2d 583.

Finally, in the eighth assignment of error, defendants claim that the court erred in not dismissing counts three, five and six on which the jury was unable to agree. The claim is premature (at best), because the court's refusal to dismiss these three counts is not a final appealable order under R.C. 2505.02. The final determination of the status of these charges is being held in abeyance under the trial court's order staying proceedings under them during this appeal.

Finding no error, we affirm.

*Judgment affirmed.*

DOAN, P.J., concurs.

KLUSMEIER, J., not participating.